IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

In the Matter of:

Ronald Symdon,
(Chapter 13)

Debtor.
Case No. 13-14692

---

MEMORANDUM DECISION ON REMAND

---

On November 18, 2013, the Chapter 13 plan of Ronald Symdon (Debtor) was confirmed. On January 27, 2014, Balisle & Roberson, S.C. (Balisle) filed a Claim for $70,000. It asserted priority under § 507(a)(1)(A) or (a)(1)(B). I denied that priority, but on appeal the District Court vacated my Order and remanded for further proceedings. Specifically, this court was directed to determine whether Balisle has standing to assert priority for this claim, and a final hearing on that issue has been held.

Debtor and his wife Peggy divorced in 2010. As part of the divorce decree, Debtor was ordered to pay $70,000 in attorneys' fees that Peggy incurred during the divorce proceedings. *In re Symdon*, Case No. 09-FA-0331 at 10 (Wis. Cir. Ct. Dane County Mar. 17, 2004). The List of Exhibits filed by both parties contain the following references to the award of attorney's fees:

**a)** The remainder of the property of the parties shall be divided as follows:
  Peggy
  . . .  6. Contribution to attorney's fees in the amount of $70,000.

*Id.* at 12.

**b)** Each of the parties shall be responsible for the following financial obligations, and each shall hold the other harmless for the payment thereof:
  Responsible Party    Creditor                    Approx. Balance

| Ron | Cash contribution to Peggy's attorneys' fees | $70,000.00 |

*Id.* at 13.

    **c)** Attorney fee Contribution from Ron to Peggy: $70,000

*Id.* at 39.

> **d)** Ron also objects to the value assigned to the loan Peggy's sister made to Peggy as a form of double counting of Peggy's attorneys fees. Because I made a separate award of $70,000 in attorneys fees to Peggy and because the loan was taken out largely to pay for Peggy's attorneys, Ron asserts that this loan constitutes a double counting of this liability.

*Id.* at 31.

Additionally, on September 22, 2011, the Wisconsin Circuit Court, Family County

Branch issued a judgement which read as follows:

> IT IS HEREBY ORDERED that the law firm, Balisle Roberson, S.C., of 131 West Wilson Street, Suite 802, Madison, Wisconsin 53703, is hereby granted a judgment against Peggy S. Symdon, of 5926 County Road A, Brooklyn, Wisconsin 53521, in the amount of $220,000, plus statutory interest at the rate of 12% per annum from the date of August 15, 2011, until the remaining principal and interest are fully paid.

*Id.* at 81. Debtor made no payment on that obligation.

On January 7, 2012, Debtor commenced a bankruptcy under Chapter 7. His

schedules listed an obligation to pay Balisle as one of a number of general unsecured debts.

Balisle brought an adversary proceeding, seeking a determination of the

nondischargeability of its attorneys' fees award. Without opposition from Debtor, the

Bankruptcy Court issued an order finding Balisle's debt was nondischargeable pursuant to

both 11 U.S.C. § 523(a)(5) and (a)(15).

On September 24, 2013, Debtor again filed for bankruptcy, this time under Chapter

13, and listed Balisle as an unsecured, non-priority creditor. Balisle sought priority under

§ 507(a)(1)(A) on the basis that its claim represented a "domestic support obligation."

2

Debtor objected to Balisle's claim to priority. I sustained that objection. The District Court vacated my decision, and held that Balisle was entitled to priority status, if Balisle had standing, "through an assignment or some other cognizable legal mechanism, to pursue Peggy Symdon's award of $70,000 in attorney's fees as originally ordered in her divorce decree." *Balisle & Roberson, S.C. v. Symdon*, 2016 WL 2731687 at *5 (W.D. Wis. 2016).

Wisconsin Statute § 767.241(1), (3) governs the award of attorneys' fees in divorce proceedings:

> (1) Court authority. The court, after considering the financial resources of both parties, may do the following:
> (a) Order either party to pay a reasonable amount for the cost to the other party of maintaining or responding to an action affecting the family and for attorney fees to either party.
> (3) To whom paid. The court may order that the amount be paid directly to the attorney or to the state or the county providing services under s. 49.22 or 49.19, who may enforce the order in its name.

Wis. Stat. § 767.241 (2015). The Family Court ordered Debtor to pay $70,000 in attorney fees, but did not order any amount "be paid directly to the attorney" as is permitted in (3) above.

Balisle can collect attorneys' fees from its client, Peggy, because there is a state court judgment entered in favor of Balisle against Peggy. And, Peggy can collect up to $70,000 calculated as attorney fees from Debtor, because the Family Court so ordered. But, there is no award of fees or judgment in favor of Balisle against Debtor. In *Mallin v. Mallin*, the court noted that alimony and attorneys' fees were separate obligations:

> The referee correctly stated that the judgment relating to attorney fees was intended alimony. Hence, the husband's debt to the wife is separate and distinct from the debt the wife owed to her attorney. The husband's obligation to pay alimony continues to exist regardless of whether the wife's debt to her attorney is discharged in bankruptcy.

3

*Mallin v. Mallin*, 657 N.E.2d 856, 859 (Ohio Ct. App. 1995); *accord Berryman v. Sutphin*,

2010 WL 1404422 at *3 (Mich. Ct. App. 2010).

It would be possible to manipulate the award in such a way that an attorney has

legal recourse against a debtor. This relationship could be achieved through a judgment

against both parties or an assignment of the obligation. *See Matter of Joseph*, 16 F.3d 86

(5th Cir. 1994) (attorney obtained judgment against both husband and wife); *In re LeRoy*,

251 B.R. 490 (Bankr. N.D. Ill. 2000) (wife assigned right to receive payment directly to

law firm). Neither step was taken in the present case. No evidence of any form of

assignment or transfer was presented at the final hearing.

An interpretation of an award of attorneys' fees as being, by default, enforceable

by the attorney seems to be based on a fundamental misunderstanding of Wisconsin marital

law. In *Clark v. Burke*, the Wisconsin Supreme Court stated:

> The reasons for not allowing actions at law for such services in actions of divorce
> are aptly stated in the Connecticut case cited: The duty of providing necessaries for
> the wife is strictly marital, and is imposed, by the common law, in reference only
> to a state of coverture, and not of divorce. By that law a valid contract of marriage
> was and is indissoluble, and therefore, by it, the husband could never have been
> placed under obligation to provide for the expenses of its dissolution. Such an event
> was a legal impossibility. Necessaries are to be provided by a husband for his wife,
> to sustain her *as his* wife, and not to provide for her future condition as a single
> woman, or perhaps as the wife of another man."
>
> To the same effect are *Williams v. Monroe; Morrison v. Holt; Ray v. Adden; Dow
> v. Eyster*. Upon this theory, the right of action at law against the husband, and in
> favor of attorneys who have rendered services for the wife in actions of divorce,
> have frequently been denied.

*Clark v. Burke*, 27 N.W. 22, 24 (Wis. 1886) (citations omitted). In *O'Connor v. O'Connor*:

> In Wisconsin, as distinguished from some states, a request for an allowance for
> attorney's fees by a wife in a divorce action is not an independent suit on the theory
> of necessities furnished to the wife. It has long been held in this state, the

4

enforcement of the duty of the husband to contribute to the wife's costs of maintaining or defending a divorce action, including attorney's fees, is incidental to that action. It was therein said the courts of this state have only such powers to require a husband to pay the expenses of prosecution in a divorce action as are given to them by statute.

*O'Connor v. O'Connor*, 180 N.W.2d 735, 737 (Wis. 1970). Until 1977, Wisconsin courts were prohibited from awarding attorneys' fees directly to an attorney, unless the divorce proceedings were dismissed. *See* WIS. STAT. § 247.23 (1975) and WIS. STAT. § 247.262 (1977); *see also* WIS. STAT. § 247.23, Judicial Council Committee's Note, 1976 ("The court cannot enter a judgment in favor of the attorneys directly."). And *O'Connor* provides an ethical rationale for this approach:

> Generally, the allowance is made to the wife as the statute prescribes, but we note a practice of ordering payment direct to the attorneys. The difficulties this practice creates are exemplified by this case. An attorney should not have a direct interest in a pending suit. He should not be a party to it and an advocate too.

180 N.W.2d at 738.

The historical rule in Wisconsin was that an award of attorney fees to one party in a divorce proceeding *must* be made payable to the spouse, not to the attorney. The Divorce Reform Act of 1977 amended the statutory provision to state that: "The court *may* order that the amount be paid directly to the attorney." Wis. Stat. § 767.241(3). Given the legislative history, the absence of any case law to the contrary, and the nature of divorce proceedings generally, it seems that a divorce decree awarding contribution to attorney fees, in the absence of explicit language to the contrary, is payable to the spouse, not the attorney.

So, if Balisle has standing to assert priority as a "creditor" of Debtor, it is not by virtue of any direct award or judgment for none was made against Debtor in favor of

Balisle. Neither is it by virtue of any assignment or transfer, for none was proved to have

been made. And an attorney does not automatically have standing on any other theory in a

bankruptcy to contest treatment of an award made to his client.

>   11 U.S.C. § 101(10)(A) states:

>   (10) The term "creditor" means-
>   (A) entity that has a claim against the debtor that arose at the time of or
>   before the order for relief concerning the debtor

11 U.S.C. § 101 (2010). U.S.C. § 101(5) defines claim:

>   (5) The term "claim" means-
>   (A) right to payment, whether or not such right is reduced to judgment,
>   liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,
>   undisputed, legal, equitable, secured, or unsecured; or
>   (B) right to an equitable remedy for breach of performance if such breach
>   gives rise to a right to payment, whether or not such right to an equitable
>   remedy is reduced to judgment, fixed, contingent, matured, unmatured,
>   disputed, undisputed, secured, or unsecured.

*Id.*

>   Discussing a divorce lawyer's standing, the Sixth Circuit stated:

>   Standing is a rather vague concept that defies precise formulation, but it seems to
>   require, at the least, that a plaintiff have a personal stake in the outcome of the
>   litigation. As a general rule, one party may not assert the rights of another, but there
>   are exceptions. In certain instances, a plaintiff with a particularly close relationship
>   to a third party may assert the rights of the third party where the plaintiff faces an
>   actual economic harm.

>   The plaintiffs' interest here consists of a desire to be paid for services rendered.
>   This seems, at least superficially, to give the plaintiffs a definite stake in the
>   outcome of this litigation. The plaintiffs, however, have no enforceable right to
>   payment. Barry and Gertrude Perlin were the only parties to the divorce proceeding.
>   The divorce decree affects only the relations between the debtor and his former
>   spouse. The judgment ordering Perlin to pay his former spouse's attorney fees was
>   rendered in her name, not the plaintiffs'. We have found no authority that would
>   permit the plaintiffs to sue in Arizona to enforce the terms of the divorce decree.

*In re Perlin*, 30 F.3d 39, 41 (6th Cir. 1994).

One court has claimed that there is a consensus that an attorney does not have standing to contest classification of an award of attorney fees when that award was made to the ex-spouse. *See In re Smith*, 419 B.R. 622, 629 (Bankr. E.D. Va. 2008) ("[D]ecisions have considered whether an attorney who is awarded fees as part of a larger judgment made solely in favor of his client in a divorce proceeding may subsequently initiate an action against the adverse spouse to challenge the dischargeability of the awarded fees. These decisions largely have decided such an attorney-claimant is without standing to bring a claim.").

Thus, there is persuasive case law holding that Balisle does not have standing to assert its claim. As in Arizona, the Wisconsin statute provides a judge with the option to award the fees directly to the attorney. As in *Perlin*, there is nothing in the divorce decree that directs Debtor to make payment to the attorney directly. My prior decision states, however, that: "In this case, the record suggests that the attorneys' fees were owed directly to Balisle." *In re Symdon*, 2014 WL 4966680 at *4 (Bankr. W.D. Wis. 2014). This statement appears to be erroneous and presumably relies on the Proof of Claim or Debtor's Schedule F; nothing in the divorce documents directs payment to Balisle. No subsequent court ruling or separate writing does so either.

Furthermore, Balisle cannot establish standing to contest classification of the award by claiming an inchoate right to garnish Debtor. Wisconsin does not permit garnishment of domestic support obligations.

Wisconsin Statute § 812.01(1) states:

812.01 Commencement of garnishment. (1) Any creditor may proceed against any person who is indebted to or has any property in his or her possession or under his or her control belonging to such creditor's debtor or which is subject to satisfaction of an obligation described under s. 766.55 (2), as prescribed in this subchapter..

7

WIS. STAT. § 812.01 (2015). Wisconsin Statute § 812.18(1) states:

> 812.18 Liability of garnishee. (1) From the time of service upon the garnishee, the
> garnishee shall be liable to the creditor for the property then in the garnishee's
> possession or under his or her control belonging to the debtor or in which the debtor
> is interested to the extent of his or her right or interest therein and for all the
> garnishee's debts due or to become due to the debtor, except such as are exempt
> from execution, or are required by a court to be paid by the debtor as restitution
> under s. 973.20, but not in excess of the amount of the creditor's claim.

WIS. STAT. § 812.18 (2015). Wisconsin Statute § 815.18(c) states:

> (3) Exempt property. The debtor's interest in or right to receive the following
> property is exempt, except as specifically provided in this section and ss. 70.20(2),
> 71.91(5m) and (6), 74.55(2) and 102.28(5):
>> (c) Child support, family support or maintenance payments. Alimony, child
>> support, family support, maintenance or separate maintenance payments to
>> the extent reasonably necessary for the support of the debtor and the
>> debtor's dependents.

WIS. STAT. § 815.18 (2015).

The District Court held that the award of attorneys' fees was a domestic support
obligation. If that fee award was reasonably necessary for the support of Peggy, it is exempt
from execution and not a proper subject of garnishment. *See Balisle & Roberson, S.C. v.
Symdon*, 2016 WL 2731687 at *5 (W.D. Wis. 2016). Additionally, this Court has
previously recognized the uniqueness of domestic support obligations in Wisconsin:

> The Wisconsin Supreme Court has also recognized the uniqueness of alimony,
> although not in the context of an attorney's lien case. In *Courtney v. Courtney*, 29
> N.W.2d 759 (1947), it said that "[alimony] judgments differ from other judgments
> in [that] they do not create the debtor-creditor relationship of the usual sort." In
> *Courtney*, a wife attempted to garnish her husband's pension fund for the back
> alimony. The husband objected, claiming that a pension fund was exempt from
> garnishment by statute. Citing two New York cases, the court found that the
> statutory exception did not apply because the fund was created for the same purpose
> as alimony-supporting those legally dependent upon the pensioner for support and
> maintenance. Despite its inclination to protect the alimony award, the court went
> on to deny the garnishment because an alimony judgment did not put the wife in
> the shoes of a judgment creditor with a final and assignable judgment. Alimony "is

8

always subject to modification by the court during the life of the parties . . ." *Id.* at 759. Thus, as viewed in *Courtney*, alimony is an important support obligation but is not a "debt" in the traditional sense.

*In re Edl*, 207 B.R. 611, 617 (Bankr. W.D. Wis. 1997). *Edl* distinguished between alimony and property divisions, but the award of attorneys' fees has already been held to constitute alimony in this case.

*Edl* also considered a case in which the potential garnishor was the spouse, not a third-party to the divorce proceeding. To hold that this distinction changes the outcome would be to hold that a third-party has more power to enforce a divorce decree than the spouse owed payment; this result is simply illogical and would create a dangerous ability to avoid standard divorce enforcement procedures. It is not a garnishment, but a motion for contempt, that is utilized to enforce payment:

> The contempt process, and not a judgment, has from earliest times been used in this state to enforce an order to pay an allowance for attorney's fees. Such payment in this state is not regarded as a debt contracted or created by the husband but the fulfillment of a duty imposed by the court.

*O'Connor v. O'Connor*, 180 N.W.2d 738; *see also Courtney v. Courtney*, 29 N.W. 2d 759, 762 (Wis. 1947); *see also Audubon v. Shufeldt*, 181 U.S. 575, 578 (1901) ("In other respects, alimony cannot ordinarily be enforced by action at law, but only by application to the court which granted it, and subject to the discretion of that court.").

Here, Balisle does not have the right to enforce payment of the $70,000 attorney fee award made in the divorce decree. First, the payment, or some part of it, is likely exempt from execution. Second, garnishment of alimony payments is not allowed under Wisconsin law. Therefore, Balisle is not a "hypothetical garnishor," and cannot have standing under that theory.

All that appears to remain to be considered in this proceeding is the possibility that

Debtor is estopped from contesting the standing asserted by Balisle. He is not.

The Supreme Court has explained the test for judicial estoppel most recently in

*Zedner*. To wit:

As this Court has explained:

> " '[W]here a party assumes a certain position in a legal proceeding, and
> succeeds in maintaining that position, he may not thereafter, simply because
> his interests have changed, assume a contrary position, especially if it be to
> the prejudice of the party who has acquiesced in the position formerly taken
> by him. *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). This rule, known as
> judicial estoppel, generally prevents a party from prevailing in one phase of
> a case on an argument and then relying on a contradictory argument to
> prevail in another phase.' *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8
> (2000)." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

Although this estoppel doctrine is equitable and thus cannot be reduced to a precise
formula or test,

> "Several factors typically inform the decision whether to apply the doctrine
> in a particular case: First, a party's later position must be clearly inconsistent
> with its earlier position. Second, courts regularly inquire whether the party
> has succeeded in persuading a court to accept that party's earlier position. .
> . . A third consideration is whether the party seeking to assert an inconsistent
> position would derive an unfair advantage or impose an unfair detriment on
> the opposing party if not estopped." *Id.* at 750-51.

*Zedner v. United States*, 547 U.S. 489, 504 (2006).

While the Seventh Circuit does not appear to have endorsed a specific application

of the *Zedner* factors, it does appear to impose a requirement that the previous act or

omission of the party, which is the basis of an argument for judicial estoppel, have been

intentional. Judge Easterbrook recently stated:

> *Biesek* concludes that principles of judicial estoppel must not be applied in a way
> that injures innocent creditors as well as culpable debtors. We now add, what should
> have been apparent, that debtors who make innocent errors should not be punished
> by loss or their choses in action when they turn the claims over to the Trustee. When
> as in *Cannon-Stokes* a debtor stubbornly tries to cut out the creditors, then the claim

is gone forever. But a debtor who errs in good faith, and tries to set things right by surrendering the asset to the Trustee, remains entitled to any surplus after creditors have been paid, just as would have occurred had the claim been disclosed on the bankruptcy schedules.

*Metrou v. M.A. Mortenson Co.*, 781 F.3d 357 (7th Cir. 2015); *see also Thompson v. Elkhart Lake's Road America, Inc.*, 2016 WL 1558414 at *5 (E.D. Wis. 2016) ("The Court finds that judicial estoppel is not warranted in this case to bar the plaintiffs' claims against Road America because there is insufficient evidence in the record as to any intentional deceit or concealment by the plaintiffs.").

As an equitable principle, judicial estoppel is employed to prevent a party from benefitting by the assumption of incompatible positions. Here, Debtor obtained no benefit at all from its earlier position that the debt was owed to Balisle. Since courts do not apply judicial estoppel in cases where debtors inadvertently benefitted from their original position, it is inappropriate to invoke judicial estoppel in a case where a debtor inadvertently harmed himself from its earlier position.

Upon the foregoing I must conclude that Balisle lacks standing to assert priority in this case for the claim it asserts against Debtor. It may be so ordered.

Dated: August 30, 2016

_____
ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE